UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

WEIGEL BROADCASTING CO.,
an Illinois corporation,

        Plaintiff,

        v.

MEDIA CULTURE, INC., a Texas
corporation,

        Defendant.

Civil Action No. 25-cv-02695

## PLAINTIFF WEIGEL BROADCASTING CO.'S ORIGINAL COMPLAINT

Plaintiff Weigel Broadcasting Co., ("Weigel") hereby brings the following Complaint for compensatory and other relief against Defendant Media Culture, Inc. ("Media Culture") and respectfully states as follows:

### A. NATURE OF ACTION

1.      This is a civil action against Defendant in which Weigel seeks payment of amounts owed totaling at least $1,802,522.75.

2.      Specifically, Defendant failed to pay Weigel the amount owed for advertisements that ran on certain television networks that are owned and/or operated by Weigel.

### B. PARTIES

3.      Weigel is an Illinois corporation with its principal place of business at 26 N. Halsted Street, Chicago, Illinois 60661.

4.      Media Culture is a Texas corporation with its principal place of business at 16200 Dallas Parkway Suite 270, Dallas, Texas 75248. Media Culture may be served through its

registered agent, Registered Agents, Inc., at 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

### C. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states. Plaintiff is a citizen of Illinois. Defendant is a citizen of Texas. The amount in controversy exceeds seventy-five thousand dollars ($75,000.00), excluding interest and costs.

6. This Court has personal jurisdiction over Media Culture because Media Culture is a Texas corporation with its principal place of business in Texas.

7. Venue is proper in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1391(a) as it is the district in which Defendant resides. Furthermore, under 28 U.S.C. § 1391(b) it is the district in which the conduct complained of arose and a substantial part of the events giving rise to the claims alleged herein occurred.

### D. THE FACTS

8. Weigel is a television broadcasting company.

9. Weigel owns and/or operates multiple stations across the United States.

10. Additionally, Weigel owns and/or operates the following television networks: MeTV, H&I, Catchy Comedy, Story Television, Start TV, Movies!, and Dabl (collectively, the "Networks").

11. Among other duties, Weigel manages ad sales, commercial insertion, billing, and collections for advertisements that run on the Networks.

12. Defendant Media Culture is an advertising agency that represents advertisers (i.e. companies who desire to advertise their business or products via television commercials) with respect to placing ads on television networks.

13. The advertisers that Media Culture represents include: National Debt Relief, Inogen, Inc. ("Inogen"), Safe Step Walk in Tub, LLC ("Safe Step"), and NeoTract, Inc. ("NeoTract") (collectively, the "Advertisers").

14. When Media Culture represents an advertiser, Media Culture bills the advertiser for the advertisements and then remits payment to Weigel after the advertiser pays Media Culture.

15. The amount that Media Culture bills an advertiser is higher than the amount owed to Weigel, enabling a profit for Media Culture.

16. Between January 2025 and August 2025, Media Culture placed thirty-nine (39) orders with Wegiel on behalf of the Advertisers for advertisements to run on the Networks (the "Advertisement Orders").

17. The Advertisement Orders can span several months and contain multiple media schedules.

18. The advertisements ran on the Networks as ordered.

19. The Advertisement Orders total $1,802,522.75.

20. After all advertisements aired in the broadcast calendar, Weigel sent invoices to Media Culture for payment.

21. In total, between January 2025 and August 2025, Weigel sent 129 invoices to Media Culture for the fulfilled Advertisement Orders.

22. The invoices Weigel sent to Media Culture confirm the advertisement was placed, the Network where it ran, the date and time the advertisement ran, and the fee owed to Weigel.

23.     Each invoice reflects the charges for advertisements that ran in the preceding month against a particular order.

24.     Each invoice provides that "Invoices that remain unpaid within 30 Days may be assessed a Late Fee of 1.5% per month."

25.     Media Culture owes Weigel $1,522,363.60 for National Debt Relief advertisements that Media Culture ordered and that ran on the Networks.

26.     Media Culture owes Weigel $149,506.50 for Inogen advertisements that Media Culture ordered and that ran on the Networks.

27.     Media Culture owes Weigel $79,520.90 for Safe Step advertisements that Media Culture ordered and that ran on the Networks.

28.     Media Culture owes Weigel $51,131.75 for NeoTract advertisements that Media Culture ordered and that ran on the Networks.

29.     On information and belief, Media Culture collected payment from National Debt Relief for advertisements that ran on the Networks.

30.     Media Culture failed to remit the amount owed to Weigel for National Debt Relief advertisements.

31.     On information and belief, Media Culture collected payment from Inogen for advertisements that ran on the Networks pursuant to the Advertisement Orders.

32.     Media Culture failed to remit the amount owed to Weigel for Inogen advertisements.

33.     On information and belief, Media Culture collected payment from Safe Step for advertisements that ran on the Networks pursuant to the Advertisement Orders.

34. Media Culture failed to remit the amount owed to Weigel for Safe Step advertisements.

35. On information and belief, Media Culture collected payment from NeoTract for advertisements that ran on the Networks pursuant to the Advertisement Orders.

36. Media Culture failed to remit the amount owed to Weigel for NeoTract advertisements.

37. A representative of Media Culture stated that the Advertisers have paid Media Culture all amounts owed to Media Culture for the Advertisement Orders.

38. On July 23, 2025, Media Culture sent Weigel a check in the amount of $269,671.00. for payment towards its $1,802,522.75 balance (the "July 23 Check").

39. The July 23 Check was returned due to insufficient funds in Media Culture's JP Morgan Chase Bank, N.A. account.

40. Subsequent to the July 23 Check being returned, a representative of Media Culture promised to send the funds via ACH but did not do so.

41. On July 31, 2025, Media Culture sent Weigel a check in the amount of $604,324.50 for payment towards its $1,802,522.75 balance (the "July 31 Check").

42. The July 31 Check was also returned due to insufficient funds in Media Culture's Veritex Community Bank account.

43. Media Culture then promised to wire replacement funds for the non-sufficient funds check no later than August 29, 2025, and establish a regular repayment schedule for the remaining balance.

44. Media Culture never wired any money to Weigel.

45.     As of September 24, 2025, no payments have been made by Media Culture against the $1,802,522.75 balance.

46.     When confronted with the account issues, an executive at Media Culture stated "Media Culture has had some mismanagement."

**COUNT I – BREACH OF CONTRACT**
*Against Media Culture, Inc.*

47.     The allegations of Paragraphs 1 through 45 are incorporated herein by reference with the same force and effect as if set forth herein.

48.     The Advertisement Orders placed by Media Culture for advertisements to run on the Networks are valid and enforceable contracts.

49.     All advertisements ordered by Media Culture on behalf of the Advertisers ran on the Networks as ordered.

50.     Weigel fully performed under the Advertisement Orders.

51.     Media Culture received full payment from National Debt Relief with respect to the Advertisement Orders.

52.     Media Culture received full payment from Inogen with respect to the Advertisement Orders.

53.     Media Culture received full payment from Safe Step with respect to the Advertisement Orders.

54.     Media Culture received full payment from NeoTract with respect to the Advertisement Orders.

55.     Media Culture did not pay Weigel for the fulfilled Advertisement Orders.

56.     Media Culture breached its obligations under the Advertisement Orders, including but not limited to its failure to remit payment to Weigel as invoiced.

57.    As a direct result of Media Culture's breach of contract, Plaintiff has been and will continue to be irreparably harmed and has suffered damages of at least $1,802,522.75 plus late fees and interest.

## COUNT II – UNJUST ENRICHMENT
### *Against Media Culture, Inc.*

58.    The allegations of Paragraphs 1 through 45 are incorporated herein by reference with the same force and effect as if set forth herein.

59.    Weigel alleges in the alternative to its breach of contract claim that Weigel is entitled to recover under the doctrine of unjust enrichment if it is determined that a valid and enforceable contract does not exist between Weigel and Media Culture.

60.    From January of 2025 to September of 2025 Weigel conferred a benefit on Media Culture.

61.    Specifically, Weigel arranged for the Advertiser's advertisements to run on the Networks as ordered by Media Culture.

62.    The Advertisers paid Media Culture for the Advertisement Orders.

63.    Media Culture was then required to pay Weigel the full amount of the invoices.

64.    Media Culture has retained all money paid to it by the Advertisers and has not remitted any funds to Weigel.

65.    It is unjust to permit Media Culture to retain the benefit without compensating Weigel for the services rendered.

66.    Media Culture's retention of benefits violates the fundamental principles of justice, equity and good conscience.

67.    If the Court finds that there was not a valid contract between Weigel and Media Culture, Weigel has no adequate remedy at law.

68.    The value of the benefit retained by Media Culture is at least $1,802,522.75 plus late fees and interest.

## DEMAND FOR JURY TRIAL

69.    Weigel demands a jury trial on all counts and as to all issues.

## PRAYER FOR RELIEF

WHEREFORE, Weigel prays that the Court enter judgment in its favor and against Defendant in the amount of $1,802,522.75, plus late fees and interest, award Weigel its costs incurred in this action, and grant such other and further relief as the Court deems just and proper.

DATED: October 3, 2025.

Respectfully submitted,

By: */s/ Edwin Buffmire*
    Edwin Buffmire
    Texas State Bar No. 24078283
    ebuffmire@jw.com
    Shane Stout
    Texas State Bar No. 24143441
    sstout@jw.com

**JACKSON WALKER LLP**
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Tel: 214-953-6000
Fax: 214-953-5822

David C. Van Dyke (*pro hac vice forthcoming*)
Illinois State Bar No. 6204705
dvd@h2law.com
Emily E. Bennett (*pro hac vice forthcoming*)
Illinois State Bar No. 6305461
ebennett@howardandhoward.com

**HOWARD & HOWARD ATTORNEYS PLLC**
180 N. Stetson Avenue, Suite 1100
Chicago, Illinois 60601
Tel: 312-372-4000
Fax: 312-939-5617

**ATTORNEYS FOR PLAINTIFF**
**WEIGEL BROADCASTING CO.**